UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 18-1608-MWF (MRWx)**          **Date:  May 9, 2018**
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

PRESENT:  HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

<table>
<tr><td>Rita Sanchez</td><td>None Present</td></tr>
<tr><td>Courtroom Deputy</td><td>Court Reporter</td></tr>
</table>

ATTORNEY PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                      None Present

PROCEEDINGS (IN CHAMBERS):  ORDER RE PLAINTIFF'S MOTION TO
                                               REMAND CASE [12]

Before the Court is Plaintiff Victoria E. Lucas's Motion to Remand (the "Motion"), filed March 28, 2018.  (Docket No. 12).  Defendant Michael Kors (USA), Inc. ("MK"), filed its Opposition on April 9, 2018.  (Docket No. 14).  Defendant Decton, Inc. joined in MK's Opposition on April 11, 2018.  (Docket No. 16).  On April 16, 2018, Plaintiff replied.  (Docket No. 17).  The Court has reviewed and considered the papers submitted on the Motion and held a hearing on **April 30, 2018**.

The Motion is **DENIED**.  The Court concludes that the Complaint adequately alleges an amount in controversy of over $5 million.  Therefore, subject matter jurisdiction exists under CAFA.

# I.      BACKGROUND

On December 26, 2017, Plaintiff filed a putative class action against Defendants MK, Decton, Inc., and Decton Staffing Services in California Superior Court asserting claims for failure to pay overtime; failure to pay minimum wage; failure to provide meal periods; failure to provide rest periods; failure to pay all wages due upon termination; failure to provide accurate wage statements; and violation of California's Unfair Competition Law ("UCL").  (Notice of Removal ("NOR"), Ex. A (Compl.), Docket No. 1).  In her complaint, Plaintiff proposes the following five classes:

**Case No. CV 18-1608-MWF (MRWx)**          **Date:  May 9, 2018**
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

**Non-Exempt Employee Class:** All current and former employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class.

**Meal Period Class:** All current and former employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who worked shifts of 5 hours or more.

**Rest Period Class:** All current and former employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who worked shifts of 4 hours or more.

**Late Pay Class:** All former employees of Defendants within the State of California at any time commencing three (3) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who did not receive all their wages upon termination and or resignation of their employment.

**Wage Statement Class:** All current and former employees of Defendants within the State of California, to whom, at any time commencing one (1) year preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, were provided with wage statements.

(*Id*. ¶ 23).  Plaintiff believes that over 100 employees would fall within the putative classes, and alleges that "[a]ccounting for employee turnover during the relevant periods necessarily increases this number substantially."  (*Id*. ¶¶ 26—27).

After filing an answer in state court, Defendant MK removed the action to this Court on February 27, 2018.  (NOR, Docket No. 1).

Case No. CV 18-1608-MWF (MRWx)           Date:  May 9, 2018

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

## II.    DISCUSSION

### A.    Jurisdiction Under the Class Action Fairness Act

Defendant MK's Notice of Removal asserts jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (NOR at 1).  Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity.  28 U.S.C. § 1332(d).

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  In a notice of removal, a defendant need only plausibly allege that these prerequisites are met.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014).  Once confronted with a motion to remand, however, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id*. at 553–54.

Relevant here, on a motion to remand, both "parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1199–1200.  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Id*. at 1198.  Lastly, there is no presumption against removal under CAFA.  *Dart Cherokee*, 135 S. Ct. at 554.

### B.    CAFA "Amount in Controversy"

The parties dispute the "amount in controversy" element of CAFA jurisdiction.  Defendant MK contends that the amount in controversy for CAFA jurisdiction is at least $6,548,582.50, broken down as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 18-1608-MWF (MRWx)**             **Date:  May 9, 2018**
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

- Missed meal break premiums =  $ 1,470,030.20

- Missed rest break premiums =  $ 1,470,030.20

- Potential unpaid overtime =    $ 1,102,522.65

- Wage statement penalties =     $   445,950.00

- Waiting time penalties =       $   398,858.40

- Unpaid minimum wage =          $   351,495.00

- Potential attorneys' fees =    $ 1,309,716.50

(NOR ¶¶ 34, 37, 40, 42, 44, 48).

Disputed here is whether this Court lacks jurisdiction because Defendant MK has not sufficiently established these amounts.  (Plaintiff acknowledges in her Reply (at 5) that the "local controversy" exception to CAFA jurisdiction does not apply.) Specifically, Plaintiff contends that Defendant MK "relies on a series of unsupported speculative assumptions about Plaintiff and the putative class in an attempt to inflate the damages[.]"  (Motion at 8).  The Court will address each category in turn.

## 1. General Sufficiency of the Evidence

Defendant MK has "no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to Plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007).  Where a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden.  *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing defendant . . . supplied an affidavit to show that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date: May 9, 2018
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies Verizon's burden.").

Defendant MK provided the Court with a declaration in support of its NOR (Docket No. 4), as well as a supplemental declaration in support of its Opposition ("Rocourt Decl.," Docket No. 14-2). Both declarations are authored by Guylaine Rocourt, MK's Senior Director of Payroll, and she provides a summary of the underlying data derived from MK's business, human resources, payroll, and timekeeping records. (Rocourt Decl. ¶¶ 3, 5). Plaintiff contends that the supplemental declaration "offers mere conclusions and nothing in the way of competent summary-judgment type proof to support removal." (Motion at 9).

The Court disagrees. The Rocourt Declaration sufficiently demonstrates her personal knowledge and familiarity with the records reviewed. Further, the information declared therein is sufficiently detailed to support her declaration regarding the number of workweeks, the payroll periods, and average hourly rates. Moreover, courts routinely rely on similar summary-judgment type evidence in ruling on remand motions. *See Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *3 (C.D. Cal. Jan. 7, 2015) (rejecting a challenge to the declaration of a human resources manager, which provided the same information as asserted here); *see also Hernandez v. Nuco2 Management, LLC*, 2018 WL 933506, at *4 (E.D. Cal. Feb. 16, 2018) (rejecting a challenge to the declaration of a senior vice president, and noting that "[a] declaration or affidavit is sufficient to satisfy the defendant's burden to prove the amount in controversy by a preponderance of the evidence.").

Accordingly, with the NOR and accompanying declarations, Defendant MK has met the preponderance of the evidence burden for removal under CAFA.

## 2. Meal and Rest Break Premiums

California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." The penalty for violation of section 226.7(b) is "one additional hour of pay at the employee's regular

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)            Date:  May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

rate of compensation for each workday that the meal or rest or recovery period is not provided."  Cal. Labor Code § 226.7(c).  "Every employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes."  Cal. Code Regs. tit. 8, § 11140.  Further, employers must provide rest breaks at the rate of ten minutes for every four hours—or major fraction thereof—worked.  *Id.*  Under Plaintiff's UCL claim, she seeks restitution of all wages and other monies owed under the California Labor Code for Defendants' failure to provide meal and rest breaks.  (Compl. ¶¶ 55, 48, 79).

Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.  *See Oda*, at *5 ("[A] defendant may calculate the amount in controversy based on reasonable assumptions.").  Here, Defendant MK has calculated the meal break premium by counting the number of work weeks in which an employee's average hours worked per day during that pay period was five hours or more, and then multiplied this number by the average hourly rate of these employees, and further multiplied this figure by an assumed rate of 2 violations per work week. (NOR ¶ 34).  In other words, Defendant MK found that there were 432 non-exempt employees in California from December 26, 2013 through December 26, 2017, and that collectively these employees worked at least 39,055 workweeks during this period at an average hourly rate of $18.82.  (*Id*; *see also* Rocourt Decl. ¶ 5).  Defendant MK estimates that these class members missed only two meal breaks per work week, such that the meal break premiums totaled: 39,055 workweeks x $18.82/hour x 2 violations = $1,470,030.20.  (NOR ¶ 34).  For the rest break premium amount, Defendant MK applied the same methodology. (*Id.*)  Therefore, according to Defendant MK, the missed meal and rest break premiums totals $2,940,060.40.  (*Id.*)

The Court rules that Defendant MK improperly applied a four-year limitations period spanning December 2013 through December 2017.  In *Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal. 4th 1094, 1099 (Cal. 2007), the California Supreme Court addressed the question of whether the "one additional hour of pay" in section 226.7 constitutes a "wage or premium pay subject to a three-year statute of limitations or a penalty subject to a one-year statute of limitations."  The *Murphy* court held that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)                    Date: May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

three-year statute of limitations applied to violations of section 226.7. *Id.* at 1109. Therefore, the Court presumes that Defendant MK factored in four years of applicable workweeks because the UCL has a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208.

However, the Court notes that premium payments pursuant to section 226.7 are not restitutionary for purposes of the UCL. *See Francisco v. Emeritus Corporation*, 2017 WL 7790038, at *5—6 (C.D. Cal. July 14, 2017) ("[T]his Court finds that 226.7 premium payments do not constitute restitution for purposes of the UCL."); *see also Parson v. Golden State FC, LLC*, 2016 WL 1734010, at *6 (N.D. Cal. May 2, 2016) (same). Thus, as noted above, because California Labor Code § 226.7 has a three-year statute of limitations, Plaintiff and the putative class members may only be allowed to recover damages from December 26, 2014 through December 26, 2017. Further, assuming that the non-exempt class members worked on average 813 work weeks per month, this would total 29,268 workweeks spanning the three-year applicable period. (*See* Rocourt Decl. ¶ 7 (opining an average of 813 work weeks)).

Accordingly, the Court calculates a total premium amount of $2,203,295.04.

Plaintiff argues that Defendant MK "proffers no competent evidence that would permit the Court to draw an inference of two missed meal periods and two missed rest periods[.]" (Motion at 15—16). However, Defendant MK correctly points out that in her complaint Plaintiff alleges that Defendant MK had a "consistent policy" of failing to provide uninterrupted meal and rest periods. (Compl. ¶¶ 3, 4, 18, 20). Plaintiff further alleges that the respective class members were not provided with the requisite meal and rest periods as "contemplated under the law." (*Id*. ¶¶ 44, 51).

The Court agrees with Defendant MK that their assumed violation rate of 2 missed meal/rest break periods per workweek is reasonable in light of the complaint's allegation that MK had a "consistent policy." (*See* Compl. ¶¶ 3, 4). This Court and numerous other courts have found similar allegations supportive of a 100% violation rate assumption, *i.e.*, assuming a single violation per work day. *See*, *e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149-50 (C.D. Cal. 2010), *affirmed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

631 F.3d 1010 (9th Cir. 2011) (reasonable to assume one denied meal period per day per class member where complaint did not specify frequency but rather noted a "consistent" denial of rest/meal breaks); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("Plaintiff's FAC does not contain any allegations that suggest a 100% violation rate is an impermissible assumption.").

The Court acknowledges that Plaintiff's allegations of a "consistent policy" are not the same as allegations of a "uniform practice," which might better support a 100% violation rate assumption.  *See Ibarra*, 775 F.3d at 1199.  However, Defendant MK has adequately taken this into account by conservatively assuming only 2 violations per a 5-day workweek.  (*See* Rocourt Decl. ¶ 6 ("[V]irtually all non-exempt MK employees in California worked full-time, which meant they generally worked at least 8 hours a day, 5 days a week.")).

Accordingly, the Court finds that Defendant MK has proven the meal and rest break premium amounts by a preponderance of the evidence.

### 3.  Unpaid Wage Claims

California Labor Code § 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon[.]" Plaintiff alleges that "[a]t all times herein mentioned, Plaintiff and the non-exempt employee class . . . were not paid overtime wages for all hours worked as a result of, including but not limited to, Defendants improperly rounding time worked by its employees."  (Compl. ¶ 35).[1]  Similarly, Plaintiff alleges that "[a]s a result of Defendants' unlawful conduct, including but not limited to improperly rounding time worked, Defendants failed to pay Plaintiff and members of the non-exempt employee

---

[1] California law requires that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Cal. Labor Code § 510(a).

**Case No. CV 18-1608-MWF (MRWx)**          **Date:  May 9, 2018**

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

class minimum wages for all hours worked[.]" (*Id*. ¶ 41).[2]  Plaintiff seeks both damages and penalties for Defendant MK's failure to pay minimum and overtime wages owed.  (*Id*. ¶¶ 37, 42).  As stated earlier, Plaintiff's UCL claim seeks restitution of all wages and other monies owed under the California Labor Code.  (*Id*. ¶¶ 78—79).

Defendant MK only looks to unpaid overtime and minimum wage damages, not the applicable penalties, in calculating the amount in controversy.  MK assumes that employees were not paid at least one hour of unpaid overtime/minimum wages for each workweek.  (NOR ¶¶ 36, 44).  Thus, Defendant MK calculates the unpaid overtime wage amount in controversy as follows: 39,055 workweeks x $28.23 overtime pay (1.5 times the average hourly rate of $18.82) = $1,102,522.65.  (NOR ¶ 37; *see also* Rocourt Decl. ¶ 5).  Similarly, Defendant MK calculates the unpaid minimum wage amount in controversy as follows: 39,055 workweeks x $9 (lowest minimum wage rate during the relevant period) = $351,495.  (NOR ¶ 44).  Thus, according to Defendant MK, the unpaid wage claims totals $1,454,017.65.  (NOR ¶¶ 37, 44.)

At the outset, the Court notes that Defendant MK relies on the Rocourt Declaration for the proposition that $9 per hour was the lowest minimum wage rate during the applicable period.  However, upon review of her declaration, the Court finds such information lacking.  Moreover, the Court notes that in December 2013 the minimum wage in California was actually set at $8 per hour, thus a more conservative estimate for Plaintiff's minimum wage claim would be $312,440 ($8 per hour x 39,055 workweeks).  *Compare* Cal. Labor Code § 1182.12 (effective Jan. 1, 2007 to Dec. 31, 2013) (setting minimum wage to not less than $8 per hour) *with* § 1182.12 (effective Jan. 1, 2014 to Dec. 31, 2016) (setting minimum wage to not less than $9 per hour); *see generally History of California Minimum Wage*, State of California Department of Industrial Relations, http://www.dir.ca.gov/iwc/MinimumWageHistory.htm (last visited Apr. 26, 2018).  In addition, compared to the alleged meal/rest break claims,

---

[2] California law provides that "[t]he minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Cal. Labor Code § 1197.

Case No. CV 18-1608-MWF (MRWx)        Date:  **May 9, 2018**

Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

Defendant MK correctly assumes here a four-year period, spanning December 2013 through December 2017, for both the overtime and minimum wage claims. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178—79 (Cal. 2000) (holding that the UCL's four-year limitations period governs a UCL action based on failure to pay wages).

Additionally, at the hearing Defendant MK argued that because Plaintiff seeks liquidated damages on her minimum wage claim (*see* Compl. ¶¶ 42, Prayer for Relief (J)), the total amount of this claim should be doubled. *See* Cal. Labor Code § 1194.2(a) ("[A]n employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."). The Court agrees with Defendant MK, and therefore factors these liquidated damages into the unpaid minimum wage claim. *See Graham v. IFCO Systems N.A., Inc.*, 2017 WL 1243498, at *8 (C.D. Cal. Mar. 3, 2017) (considering liquidated damages part of the amount in controversy); *see also Hernandez*, at *3 (same). In sum, based on Defendant MK's arguments, the Court calculates $1,727,402.65 in total unpaid wages.

Plaintiff submits no countervailing evidence, instead putting forth two arguments as to why Defendant MK's calculations are improper:

***Unrealistic assumptions and no supporting facts:*** Plaintiff first argues that Defendant MK's "unrealistic assumption provides no facts from which to prove that more likely than not employees were owed one hour of unpaid minimum wages and one hour of overtime wages per week as a result of uneven rounding." (Motion at 14; *see also* Reply at 9 (Defendant "offered no real evidence to justify the unrealistic assumption . . . [which] is particularly troubling given the fact that [Defendant MK] had access to time and payroll records[.]")). In other words, Plaintiff asserts that the one hour per week assumption is speculative, and Plaintiff attempts to narrow her wage claims to those resulting from allegedly unlawful rounding practices. (*Id.*) In response, Defendant MK argues that Plaintiff's "complaint is explicitly not limited to rounding[,]" and that its assumption is "more than reasonable" because Plaintiff's "complaint alleges that Defendants had a 'consistent policy of failing to pay wages[.]'" (Opposition ("Opp'n") at 7—8 (citing Compl. ¶¶ 2, 17)).

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:       Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

In the Court's view, Plaintiff has crafted her Complaint in such a way that her wage claims are not solely limited to a rounding theory.  To be sure, Plaintiff explicitly asserts that Defendants violated California's "wage and hour laws as a result of, including ***but not limited to***, unevenly rounding time worked."  (Compl. ¶ 2) (emphasis added).  While the Court recognizes Plaintiff may have including this language as  a "safeguard," as was argued at the hearing, the Court notes that had Plaintiff wanted to avoid removal by limiting her recovery, she could have pled facts narrowing the scope of her wage claims.  *See Oda*, at *6; *see also Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 980 (9th Cir. 2013) ("[P]laintiff is the master of her complaint and can plead to avoid federal jurisdiction.") (internal quotation marks and citation omitted).  Thus, the Court agrees with Defendant MK on this issue.  *See Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 806 (9th Cir. June 21, 2017) ("It is axiomatic that whether remand is proper must be ascertained on the basis of the pleadings at the time of removal.") (internal quotation marks and citation omitted); *accord Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (holding that jurisdiction must be analyzed on the basis of pleadings filed at the time of removal); *see also Ibarra*, 775 F.3d at 1198 n.1 (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 998 (6th Cir. 1976) for the proposition that the amount recoverable may drop below the jurisdictional limit as a result of discovery and application of a legal defense, but such post-removal events do not deprive the district court of federal jurisdiction).

In light of Plaintiff's broad allegation that Defendants had a "consistent policy of failing to pay wages," the Court finds reasonable Defendant MK's assumption that the class members were not compensated for one hour of overtime and minimum wages per workweek.  (*See* Compl. ¶ 2).  While Plaintiff disputes this estimate as unreasonable, the Court notes that other courts within the Ninth Circuit have accepted a rate of one violation per workweek as an acceptable basis for calculating the amount in controversy.

For example, in *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014), the plaintiff alleged in his complaint that the putative class members

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

were forced "to work on a regular and consistent basis without receiving compensation for all hours worked at their regular rate or . . . at the applicable overtime rate[.]"  The *Arreola* court noted that "[w]here . . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumption that every employee experienced at least one violation once per week."  *Id*; *see also Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's assumption that each class member was entitled to one hour of overtime per week); *see also Soto v. Grief Packaging, LLC*, 2018 WL 1224425, at *3 (finding allegation that defendant failed to pay plaintiff and class members minimum wage for all hours worked on a "consistent and regular basis" sufficient to support defendant's estimate of one hour per week per class member).

Furthermore, Defendant MK is not required to prove Plaintiff's case for her by proving the actual rates of violation at the removal stage.  *See Oda*, at *5 (Defendant "is not required to comb through its records to identify and calculate the exact frequency of violations.  Rather, [the defendant] is only required to prove the amount in controversy by a preponderance.").

The Court further notes that Plaintiff's overtime claim asserts that class members were not paid overtime wages for work that they completed beyond 8 hours per day (Compl. ¶ 35), and the Rocourt Declaration states that non-exempt class members were required to work full time, "which meant they generally worked at least 8 hours a day, 5 days a week" (Rocourt Decl. ¶ 6).  However, because there is also evidence that all class members typically worked an "average shift length [of] 8.9 hours per day" for which they allegedly did not receive overtime compensation after the eighth hour of work, a 90% violation rate (*e.g.*, 4.5 hours per week) in this context would be reasonable.  (*See* Rocourt Decl. ¶ 6 ("Based on my review of a sample of timekeeping records of 106 MK non-exempt California employees, from December 26, 2014 to November 7, 2015, the average shift length per employee was 8.9 hours per day.  This number was reached by calculating the overall average shift length listed in timekeeping records during this period of time.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

Lastly, to the extent that Plaintiff relies on *Roth v. Commercial Bank*, 799 F. Supp. 2d 1107, 1119 (C.D. Cal. 2010) for the proposition that Defendant MK should have based its calculation regarding unpaid overtime as the difference between the overtime rate and the regular rate, not the overtime rate itself—the Court is not persuaded.  In *Roth*, the district court ruled that there was no basis for use of the full overtime rate when the plaintiff's allegation was ***not*** that he was not paid at all, but that he was not paid an overtime premium for overtime work, in other words the unpaid balance of overtime compensation.  *Id*. at 1119.  Yet here, Plaintiff alleges that "[a]t all times herein mentioned, Plaintiff [and the class members] . . . were not paid overtime wages for all hours worked[.]"  (Compl. ¶ 35).  Therefore, the formula applied in *Roth* does not apply in this context because Plaintiff appears to allege that she is owed the total wages, not just the overtime compensation.  (And even if *Roth* applies, that does not lower the amount below $5,000,000).

***Double counting:***  Plaintiff's second argument that Defendant MK is "double counting damages" is equally problematic.  (*See* Reply at 9.)  Plaintiff asserts that "the result of the rounding will amount to either an overtime or a minimum wage violation, depending on the hours worked per shift, but not both damages in a given shift."  (*Id*.)  However, California Labor Code § 1194, which Plaintiff relies on, explains that an employee who has been paid "less than the legal minimum wage or the legal overtime compensation is entitled to recover . . . the full amount of this minimum wage or overtime compensation."  Further, Plaintiff seeks both the "full amount of unpaid minimum wages," (Compl. ¶ 42), and the "overtime wages in an amount to be determined at trial," (*Id*. ¶ 37).  (*See also id*. ¶¶ Prayer for Relief (H) & (K)).  Thus, the Court gleans from these allegations that the unpaid minimum and overtime wages appear to be separate types of damages that can be factored into the amount in controversy.

Accordingly, the Court finds that Defendant MK has proven the unpaid wage claim amounts by a preponderance of the evidence.

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

## 4.  Inaccurate Wage Statements

"An employee suffering injury as a result of a knowing and intentional failure by an employer" to provide accurate wage statements under section 226(a) "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Cal. Labor Code § 226(e)(1).  Claims for penalties under section 226 are subject to a one-year statute of limitations.  *See* Cal. Code Civ. Proc. § 340(a).

Here, Defendant MK assumes that all of the putative class members received inaccurate wage statements during the applicable one-year period, and calculates the amount in controversy by applying penalties.  (*See* NOR ¶ 40.)  Therefore, in its Notice of Removal, Defendant MK calculates the wage statement amount in controversy as follows: 8,919 pay periods x $50 per violation = $445,950.  The 8,919 pay periods were calculated in this fashion:  In her declaration, Ms. Rocourt states that (1) "from December 26, 2016 to December 26, 2017, there were approximately 380 non-exempt [Defendant MK] employees who worked in California[;]" and (2) "from December 26, 2016 to December 26, 2017, there were approximately 8,919 pay periods worked by [Defendant MK's] non-exempt California employees (*i.e.*, collectively, non-exempt employees received approximately 8,919 pay stubs)."  (Rocourt Decl. ¶ 5).

However, Defendant MK also argues, both in its Opposition and at the hearing, that assuming "a penalty of $50 for the first pay period and $100 for each subsequent pay period, the amount in controversy climbs to $872,900."  (Opp'n at 15).  The Court can only speculate that Defendant MK originally only applied the first time penalty rate ($50) to all violations in an effort to be conservative, however, the Court notes that it is proper to apply section 226(e)(1) penalties directly as the statute reads—$50 for the initial pay period, and $100 for each violation in a subsequent pay period.  Cal. Labor Code § 226(e)(1); *see Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1336 (E.D. Cal. 2015) ("[T]he court will interpret the language of section 226(e) according to its plain meaning. Defendant faces a $50 penalty for each violation in an initial pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

period, and a $100 penalty per employee for each violation that occurs in a pay period after the initial pay period*."); see also Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *6 (N.D. Cal. Jan. 9, 2018) ("Thus, penalties are correctly calculated at (1 workweek * $50) + (12 workweeks * $100) * (201 employees) . . . Defendants' calculation is therefore reasonable."); *accord Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *5 (C.D. Cal. July 28, 2017) (applying $50 penalty for 267 initial pay periods and a $100 penalty for 4,479 subsequent pay periods). Therefore, the Court rules that Plaintiff's claim for penalties under section 226(e)(1) amounts to $872,900, broken down as follows: 380 (initial pay period) x $50 + 8,539 (subsequent pay periods) x $100. The Court also observes that this aggregate penalty, $872,900, does not exceed $4,000 per employee for the relevant one-year time period. *See* Cal. Labor Code § 226(e)(1).

Plaintiff argues that "the allegations [do not] suggest that wage statements were inaccurate for every pay period[,]" and thus a 100% violation rate is unreasonable. (Motion at 17). However, Plaintiff alleges in her Complaint "that at all relevant times, Defendants maintained and continue to maintain a policy and practice of issuing wage statements that do not show, including but not limited to, pay due and owing for meal and rest break law violations and payment and hours worked that were not paid." (Compl. ¶ 71). Moreover, in response to Plaintiff's argument, Defendant MK argues that "[a]ssuming a 100% violation rate where all wage statements are allegedly unlawful is appropriate," and that "[t]his assumption is even more reasonable in light of the fact that Plaintiff's wage statement claim piggybacks onto her missed meal and rest break and unpaid overtime claims, each of which assert widespread violations." (Opp'n at 15).

Defendant cites to *Moppin v. Los Robles Regional Medical Center*, 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) to support its argument. In *Moppin* the court found that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements." *Id*. The *Moppin* court stated that this "language is not so ambiguous. It accuses defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

of issuing inaccurate wage statements 'at all times' and in regards to both plaintiff and the class members." *Id*. While the Court finds *Moppin* persuasive and directly on point, the Court also notes that it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant. For example, assuming that it is true that Defendants had a "consistent policy" of failing to provide meal/rest breaks, as discussed *supra*, then the wage statements that Defendants provided would necessarily have been inaccurate 100% of the time, given that each wage statement would have failed to include compensation for the missed meal/rest break.

Accordingly, the Court finds that $872,900 is a reasonable estimate of the amount in controversy for this claim.

### 5.  Waiting Time Penalties

Plaintiff alleges in her Complaint that "Defendants failed to pay Plaintiff and the other members all wages earned and unpaid prior to termination in accordance with [California] Labor Code §§ 201 or 202," and "that at all relevant times within the applicable limitations period, Defendants had a practice of not paying upon termination, the wages owed to them as a consequence of overtime wages, minimum wages, and meal and rest period violations." (Compl. ¶ 60). An employer's failure to timely pay wages owed pursuant to §§ 201 or 202 results in a penalty of the employee's wages for every day that it is late, up to a maximum of thirty days' wages. *See* Cal. Labor Code § 203. Furthermore, the statute of limitations for a waiting time penalties claim under §§ 201 and 202 is three years. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1404 (Cal. 2010); *see also* Cal. Civ. Proc. Code § 338(a).

Here, Defendant MK assumes the full statutory maximum of 30 days for its waiting time penalties calculation. NOR ¶ 42. Defendant MK calculates the amount in controversy by multiplying the 30-day penalty period by the average hourly rate ($17.87), average hours worked per day (8), and the total terminated employees within the limitation period (93). (*Id.*) In her declaration, Ms. Rocourt states that "[b]ased on my review of payroll records that include rates of pay, from December 26, 2014 to

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

December 26, 2017, [Defendant MK's] non-exempt employees' average hourly was $17.87." (Rocourt Decl. ¶ 5).

Therefore, according to Defendant MK, Plaintiff's waiting time penalties claim puts at least $398,858.40 in controversy.

Plaintiff argues that Defendant MK's "calculations for waiting time penalties speculatively assumes without any support, that the amounts owed are not paid for the maximum 30 days after termination and that employees worked eight hour shifts rather than part-time." (Motion at 17).  In response, Defendant argues that "it is reasonable to assume that virtually all employees in the three years prior to the filing of the complaint are theoretically owed the maximum" 30-day wage penalty because in her complaint Plaintiff asserts that "at all relevant times . . . Defendants had a practice of not paying upon termination, the wages owed[.]" (Opp'n at 16).

Defendant MK's estimate is not speculative for these reasons:

*First*, the Court notes that Defendant MK has presented evidence indicating that "virtually all non-exempt [Defendant MK] employees in California worked full time[.]" (Rocourt Decl. ¶ 6).

*Second*, the Court agrees with Defendant MK that the maximum 30-day penalty period assumption is reasonable in light of the allegations in the Complaint.  *See Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (based on the allegations, reasonable to assume all terminated employees suffered one incident of underpayment and awarding penalties for 30-day period); *accord Calderon v. BKB Construction, LP*, 2017 WL 2618094, at *6 (N.D. Cal. June 16, 2017) (reasonable to assume 30-day period when five months elapsed between last day of work and filing complaint); *see also Franke*, at *4 (assuming 30-day period was reasonable).

*Third*, while Defendant MK originally assumed an 8-hour work day in its NOR, Defendant now points to Ms. Rocourt's declaration in which she states that the

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018

Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

"average shift length per employee was 8.9 hours per day." (Opp'n at 17 (citing Rocourt Decl. ¶ 6)). Thus, Defendant MK argues that the total amount of waiting time penalties should be increased by roughly $60,000. (Opp'n at 17). However, given that the Court is already persuaded that the jurisdictional amount has been satisfied, the Court need not factor in this additional modest increase.

Accordingly, the Court finds that $398,858.40 is a reasonable estimate of the amount in controversy for this claim.

## 6. Attorneys' Fees

Attorneys' fees may be factored into an amount in controversy determination where they are available pursuant to the statute or statutes underlying the plaintiff's claims. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Here, Plaintiff seeks attorneys' fees pursuant to California Labor Code §§ 226(e)(1) and 1194 (*see* Compl. ¶¶ 37, 42, 80), and California Code of Civil Procedure § 1021.5 (*see* Compl. ¶¶ 37, 48, 55, 80). Therefore, it is proper to include *some* amount of attorneys' fees in the amount in controversy calculation.

The threshold issue here is whether the Court may consider unaccrued attorneys' fees as part of the amount in controversy. Defendant MK contends that this Court should assess attorneys' fees "through trial when calculating the amount in controversy." (Opp'n at 18, advocating for a twenty-five percent contingency fee award based on a common fund recovery). Plaintiff contends that the only attorneys' fees that may be considered as part of the amount in controversy are those incurred as of the date of removal. (Motion at 18). The Court will first address whether post-removal attorneys' fees can be considered, and then the proper method of fee calculation.

***First***, the Court observes that there is a split among district courts, as well as appellate courts, regarding when to measure attorneys' fees for purposes of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)          Date:  May 9, 2018
Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

determining the amount in controversy under both 28 U.S.C. § 1332(d)(1) (CAFA) and § 1332(a) (diversity of citizenship).  *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016) ("It remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal . . . may be included in the amount-in-controversy.  Other circuits and the district courts in this circuit are divided on the issue . . . [But we] do not resolve this open question here."); *further compare Perez Reyes v. National Distribution Centers, LLC*, 2018 WL 679451, at *5 (C.D. Cal. Feb. 1, 2018) (CAFA wage and hour case, stating "[t]his court takes the position that when calculating attorneys' fees to establish jurisdiction, the only fees that can be considered are those incurred as of the date of removal.") (internal quotation marks and citation omitted); *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999) (single plaintiff case holding the same), *with* Franke, at *6 (CAFA wage and hour case, noting "this court agrees with those that consider a reasonable estimate of the fees that can be anticipated at the time the action is resolved."); *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (single plaintiff case, stating "[t]he court believes that, when authorized by an underlying statute, the better view is to consider post-removal attorneys' fees because they are part of the total amount at stake.").

At the hearing, defense counsel directed the Court to a recent Ninth Circuit opinion, *Chavez v. JPMorgan Chase & Co.*, No. 16-55957, 2018 WL 1882908, at *1 (9th Cir. Apr. 20, 2018) (single plaintiff case), which held:

> We conclude that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.

Case No.  CV 18-1608-MWF (MRWx)                    Date:  May 9, 2018

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

While the facts of *Chavez* are distinguishable from those here—namely, the *Chavez* court considered the amount in controversy threshold for diversity jurisdiction and whether future wages could be included, not the threshold for CAFA jurisdiction and whether post-removal attorney's fees could be included—this Court, nonetheless, finds *Chavez* persuasive.  In fact, the broad holding strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorney's fees.  *Id*. at *4. Therefore, the Court agrees with Defendant MK that unaccrued post-removal attorneys' fees can be factored into the amount in controversy.

*Second*, the Court also recognizes a split among district courts as to the appropriate method for fee calculation in wage and hour class actions at the removal stage. For example, some courts in this Circuit have observed that "the benchmark [percentage method] used to calculate attorneys' fees . . . is conceptually distinct from the proper method to estimate attorneys' fees for calculating the amount in controversy in the context of a jurisdictional amount in controversy." *Vasquez*, at *6; *see also Scott v. Credico (USA) LLC*, 2017 WL 4210994, at *3 (N.D. Cal. Sept. 22, 2017) ("Because contingency fees based on a common fund recovery are not damages, they should not be counted as part of the amount in controversy . . . [Rather, such] fees to be properly considered as part of the amount in controversy should be calculated based on the number of hours worked at a reasonable hourly rate (*i.e.*, the lodestar)."); *accord Jian-Ming Zhao v. RelayRides, Inc.*, 2017 WL 6336082, at *17 (N.D. Cal. Dec. 12, 2017) ("A class action settlement, however, requires the court to assess the reasonableness of a fee award with reference to a case that is close to conclusion based largely on fees already incurred and an established amount of damages. In contrast, a court assessing future attorneys' fees at the time of removal, when a class action is in its early stages, does not have such information. Therefore, the court concludes that it is not sufficient, in the context of CAFA removal, to rely on the 25% benchmark that is used to calculate attorneys' fees in the context of settlement or following trial[.]").

The Court agrees with the reasoning above to the extent that common fund cases are different from other cases involving an award of attorneys' fees.  The difference is that, ordinarily, the amount of attorneys' fees awarded does not impact the amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-1608-MWF (MRWx)           Date:  May 9, 2018
Title:     Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

recovery.  By comparison, "[u]nder regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund."  *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003).  "The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the class."  *Id.*

However, in the past this Court has approved, in a similar CAFA wage and hour case, a twenty-five percent benchmark "to be added to any claim for which attorneys' fees [was] available."  *Herrera v. Carmax Auto Superstores California, LLC*, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014).  To reach that conclusion, this Court, summarily, and without lengthy discussion, relied on an unpublished Ninth Circuit opinion which stated the following: "Although [defendant] correctly notes that 25% recovery is the 'benchmark' level for reasonable attorney's fees in class action cases . . . and that such fees are properly included in calculations of the amount in controversy . . . [defendant] has not established by a preponderance of the evidence that the underlying amount upon which those fees would be based is at least $4 million, as would be required to meet the $5 million minimum."  *Garibay v. Archstone Communities, LLC*, 539 F. App'x 763, 764 (9th Cir. Aug. 27, 2013) (unpublished decision that is citable pursuant to Federal Rule of Appellate Procedure 32.1, but is not precedential under Ninth Circuit Rule 36-3(a)).

Furthermore, as noted above, other courts in this Circuit have similarly applied a benchmark figure to calculate attorneys' fees in CAFA wage and hour cases.  *See*, *e.g.*, *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5–6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated fee award of twenty-five percent of the plaintiff's damages in calculating the amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Yocupicio v. PAE Group, LLC*, 2014 WL 7405445, at *6 (C.D. Cal. Dec. 29, 2014) (same), *rev'd on other grounds*, 795 F.3d 1057 (9th Cir. 2015); *Fong v. Regis*

**Case No. CV 18-1608-MWF (MRWx)**                     **Date:  May 9, 2018**

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

*Corporation*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

Nevertheless, the Court need not resolve this issue on the facts before it today, because, as calculated below, the Court determines that Defendants have sufficiently demonstrated that the amount in controversy, exclusive of attorneys' fees, exceeds the jurisdictional threshold under CAFA.

### 7.  Total Amount in Controversy

Based on the Complaint and the evidence provided by Defendant MK, the Court determines that the following amounts are reasonable:

- Meal/rest break premiums =                    $2,203,295.04

- Potential unpaid overtime wages =             $1,102,522.65

- Potential unpaid minimum wages =               $312,440.00

- Unpaid minimum wage liquidated damages =       $312,440.00

- Wage statement penalties =                     $872,900.00

- Waiting time penalties =                       $398,858.40

In sum, the Court calculates an amount in controversy of at least $5,202,456.09, exclusive of attorneys' fees.  Since this exceeds CAFA's $5,000,000 minimum, the Court concludes jurisdiction is proper.

CIVIL MINUTES—GENERAL

**Case No. CV 18-1608-MWF (MRWx)**          **Date:  May 9, 2018**

Title:      Victoria E. Lucas v. Michael Kors (USA), Inc., et al.

## III.    **CONCLUSION**

For the foregoing reasons, the Court finds that this case was properly removed and that the Court has jurisdiction.  Accordingly, Plaintiff's Motion to Remand is **DENIED**.